IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HASANI LEE, (Beneficial);<br><br>Plaintiff,<br><br>vs.<br><br>OMAHA HOUSING AUTHORITY FOUNDATION INC., Omaha Housing Authority;<br><br>Defendant. | 8:24CV203<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on Plaintiff Hasani Lee's ("Lee") Motion for Status. Filing No. 7. Upon consideration, Lee's motion is granted and this Memorandum and Order serves to advise him of the status of his case. Lee, a non-prisoner proceeding pro se, filed a Complaint, Filing No. 1, on June 3, 2024, and has been given leave to proceed in forma pauperis, Filing No. 5. The Court now conducts an initial review of Lee's claims pursuant to 28 U.S.C. § 1915(e)(2).

**I. SUMMARY OF COMPLAINT**

Lee sues the Omaha Housing Authority Foundation Inc. ("OHA")[1] seeking $50,000,000 in damages because the OHA made false police reports and filed a false forcible entry and eviction action against Lee. Liberally construed, Lee claims the OHA's actions violated 42 U.S.C. § 1983, 42 U.S.C. § 3617, 18 U.S.C. § 1001, and various Nebraska statutes, as well as constituted a tortious interference with a power of attorney. See Filing No. 1 at 3.

---

[1] "The 'OHA is a public housing agency established pursuant to state and federal housing programs' that operates under the Nebraska Housing Agency Act, Neb. Rev. Stat. §§ 71-1572, et seq." *Franklin v. Omaha Hous. Auth.*, No. 8:21CV101, 2021 WL 3023730, at *1 n.1 (D. Neb. July 16, 2021) (internal citation omitted) (quoting *Banks, Jr. v. Housing Auth. of City of Omaha*, 795 N.W.2d 632, 635 (Neb. 2011)).

Lee and Toni Wiggins ("Wiggins"), who appears to be Lee's spouse,[2] are the power of attorney and caretakers for Lee's father, Henry Lee ("Henry"), who is a tenant in an OHA housing unit at 4850 Underwood Avenue in Omaha, Nebraska (hereinafter "the Property"). On April 12, 2024, OHA CEO Joanie Poore ("Poore") called the Omaha Police Department to the Property and had Lee and Wiggins arrested and removed from the Property based on her false statements that Lee and Wiggins were unauthorized guests and trespassers. Poore knew, however, that Lee and Wiggins were Henry's "Power of Attorneys doing what was best for him to receive a reasonable accommodation for his disabilities." *Id*. at 4. Thereafter, on April 19, 2024, the OHA filed a false forcible entry and eviction action against Lee and Wiggins in county court, which the OHA "lost" on May 16, 2024, "for bringing the case against the wrong people." *Id*. Lee alleges the "OHA has been harassing, threatening, and d[i]scriminating against Power of Attorneys Hasani Lee and Toni Wiggins since Oct[ober] 2023 until current." *Id*.

As relief, Lee requests $25,000,000 in damages "for intentional infliction of emotional Distress, Pain and Suffering, and for the Intentional Interference with Contractual Relations that has occurred from Oct[ober] 15, 2023[,] until present." *Id*. Lee also requests an additional $25,000,000 in punitive damages "for the malicious attacks" against, and slander and defamation of, his character due to Poore's false statements to the police and the OHA's filing of the false forcible entry and eviction action, as well as for the constant challenges to, and discrediting of, Lee's "fiduciary duties of Power of

---

[2] Wiggins filed a nearly identical action on the same date that Lee filed the present Complaint. *See Wiggins v. Omaha Housing Authority Foundation Inc.*, 8:24-cv-00202-JFB-PRSE (D. Neb.) (Complaint, Filing No. 1, filed June 3, 2024).

2

Attorney" and the "harassment, . . . intimidation, and d[i]scrimination" by the OHA.  *Id.* at 4–5.

## II.  APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate.  *See* 28 U.S.C. § 1915(e).  The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)).  However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

## III.  DISCUSSION OF CLAIMS

### A. Jurisdiction

3

Federal district courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Section 1331 provides for '[f]ederal-question' jurisdiction, § 1332 for '[d]iversity of citizenship' jurisdiction." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006). "A plaintiff properly invokes § 1331 jurisdiction when [he] pleads a colorable claim 'arising under' the Constitution or laws of the United States. [He] invokes § 1332 jurisdiction when [he] presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000." *Id*. (internal citation and footnote omitted).

Liberally construing Lee's Complaint, he asserts federal law claims pursuant to 42 U.S.C. § 1983 and the Fair Housing Act ("FHA"). In addition, Lee asserts statutory and tort claims under Nebraska law.

Because Lee does not allege that his citizenship or the citizenship of the OHA lies outside of Nebraska, this Court's ability to entertain the state-law claims cannot be predicated on § 1332, but instead must depend upon 28 U.S.C. § 1367(a), which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." When a district court has disposed of all federal claims that conferred original jurisdiction, it may decline to exercise supplemental jurisdiction over remaining state-law claims. 28 U.S.C. § 1367(c)(3). Usually, the dismissal of the federal claims "will point toward declining to

4

exercise jurisdiction over the remaining state-law claims." *Wilson v. Miller*, 821 F.3d 963, 971 (8th Cir. 2016) (quotation omitted).

With these jurisdictional principles in mind, the Court next examines the claims raised by Lee's Complaint.

**B. Federal Claims**

Liberally construed, Lee asserts, under 42 U.S.C. § 1983, that the OHA discriminated against, harassed, and retaliated against him contrary to federal law and his constitutional rights by submitting a false report to the police and filing a false eviction action against him. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### 1. Constitutional Claims

The OHA is a political subdivision of the state of Nebraska, *see* Neb. Rev. Stat. § 71-1575(16), and, thus, may be liable under section 1983 when either its "policy" or "custom" caused a violation of Lee's constitutional rights, or a "policymaker" directly caused the rights violation. See *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Doe By and Through Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978)). An "official policy" involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy. *Jane Doe A By and Through Jane Doe B v. Special School Dist. of St. Louis County*, 901

F.2d 642, 645 (8th Cir.1990) (citing *Pembaur*, 475 U.S. at 483).  To establish the existence of a governmental custom, a plaintiff must prove:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Jane Doe*, 901 F.2d at 646.

Lee does not present any allegations of an official policy or custom in his Complaint.  "At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (quoting *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)).  Liberally construed, Lee's Complaint may be read as alleging Poore is a policymaker for the OHA in her position as CEO and Poore's false statements to police leading to Lee's arrest and removal from the Property violated Lee's constitutional rights.  The Court finds, however, that the facts alleged fail to establish a violation of Lee's constitutional rights.

A § 1983 action based on government officials' filing of a false report only lies when the alleged falsified report leads to an unconstitutional deprivation of life, liberty, or property. *A.J. ex rel. Dixon v. Tanksley*, 94 F. Supp. 3d 1061, 1071 (E.D. Mo. 2015), *aff'd*, 822 F.3d 437 (8th Cir. 2016).  Here, Lee's alleges he was arrested and removed from the Property based on Poore's statements, but Lee does not allege any facts suggesting he was deprived of any liberty interest as a result.  Nothing in the Complaint suggests Lee

6

was detained after his removal from the Property, and, more importantly, the Complaint fails to allege any facts suggesting Lee had a liberty interest in remaining on the Property. Lee alleges Henry was the tenant of the Property and specifically states that he was "not the tenant." Filing No. 1 at 5. While Lee alleges he was Henry's power of attorney, he alleges no facts to suggest his status as a power of attorney gave him a legally protected interest in remaining on the Property. As such, Lee has not alleged sufficient facts to "nudge" his § 1983 claim against the OHA across the line from conceivable to plausible.

### 2. Fair Housing Act

Lee's allegations may also be understood as raising discrimination, harassment, and retaliation claims under the FHA, as amended, 42 U.S.C. § 3601–3619. A person subjected to discrimination, harassment, or retaliation in violation of the FHA can bring a private cause of action for damages. 42 U.S.C. § 3613; *Neudecker v. Boisclair Corp.*, 351 F.3d 361, 363 (8th Cir. 2003). "[A]n action brought for compensation by a victim of housing discrimination is, in effect, a tort action." *Meyer v. Holley*, 537 U.S. 280, 285 (2003).

The FHA prevents discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin," or "because of a handicap." 42 U.S.C. § 3604(b), (f)(2). "Disparate-treatment claims under the FHA are tested under the same framework as Title VII disparate-treatment claims." *Gallagher v. Magner*, 619 F.3d 823, 831 (8th Cir. 2010). Here, Lee fails to state a discrimination claim under the FHA because he makes no allegations

7

regarding his race, color, religion, sex, familial status,[3] national origin, or handicap, or that such characteristics were the basis for the OHA's actions against him. Similarly, Lee fails to allege facts indicating that the OHA subjected him to unwelcome harassment based on such characteristics and that this unwelcome harassment was sufficiently severe to deprive him of any rights to which he was entitled under the FHA with respect to the Property. *Neudecker*, 351 F.3d at 364 ("harassment in the housing context is actionable under the FHA"; disability harassment); *see also United States v. Hurt*, 676 F.3d 649, 654 (8th Cir. 2012) (sexual harassment actionable under FHA).

In addition to discrimination and harassment claims, the FHA specifically provides a civil remedy and "prohibits retaliation against any person on account of his having exercised or enjoyed a right granted or protected by the FHA." *Gallagher*, 619 F.3d at 838. The FHA makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. Unlawful conduct under section 3617 includes "[i]ntimidating or threatening any person because that person is engaging in activities designed to make other persons aware of, or encouraging such other persons to exercise, rights granted or

---

[3] To the extent Lee may be attempting to assert FHA claims based on his familial status and relationship to Henry, such claims must fail as the FHA defines "familial status" to mean:

> one or more individuals (who have not attained the age of 18 years) being domiciled with—
> (1) a parent or another person having legal custody of such individual or individuals; or
> (2) the designee of such parent or other person having such custody, with the written permission of such parent or other person.

42 U.S.C. § 3602(k).

8

protected by this part." 24 C.F.R. § 100.400(c)(4). "To state a claim for retaliation under the FHA, [Lee] must show: (1) Lee engaged in a protected activity; (2) Defendant was aware of the activity; (3) Defendant took adverse action against Lee; and (4) there is a causal link between the adverse action and the protected activity." *United States v. Edmunds*, No. 15-CV-2705, 2016 WL 7670605, at *4 (D. Minn. Dec. 6, 2016), *report and recommendation adopted*, No. CV 15-2705, 2017 WL 102964 (D. Minn. Jan. 10, 2017). "Protected activity can include requesting a reasonable accommodation, protesting discriminatory housing practices, or opposing practices the plaintiff reasonably and in good faith believed amounted to discriminatory housing practices." *Kris v. Dusseault Fam. Revocable Tr.*, 594 F. Supp. 3d 333, 341 (D.N.H. 2022).

Even when liberally construed, Lee's Complaint does not allege *facts* showing that he engaged in a protected activity under the FHA and that such protected conduct was the reason for the OHA's false statements and false eviction action against him. Lee alleges that Poore made false statements to the police that Lee and Wiggins were unauthorized guests and trespassers despite knowing that Lee and Wiggins were Henry's "Power of Attorneys doing what was best for him to receive a reasonable accommodation for his disabilities." Filing No. 1 at 4. Lee's allegations, however, are vague, and he alleges no facts indicating what he was doing for Henry for him to receive a reasonable accommodation for his unspecified disabilities or even whether the reasonable accommodation was one requested from the OHA or was merely an accommodation that Lee himself was providing Henry. Moreover, Lee alleges no facts suggesting a causal connection between whatever reasonable accommodation he may have been seeking for, or providing to, Henry and the OHA's attempts to remove him from the Property via

the false reports to police and the filing of the eviction action. Thus, Lee has failed to state a plausible retaliation claim under the FHA upon which relief may be granted. *See Burshteyn v. Cmty. Hous. Ass'n, Inc.*, No. 4:19-CV-00830-SRC, 2020 WL 529308, at *5 (E.D. Mo. Feb. 3, 2020) (retaliation claim subject to dismissal where plaintiff failed to allege "any facts indicating a causal connection between any protected activity and any adverse action").

### 3. 18 U.S.C. § 1001

Lee also appears to allege a section 1983 claim based on the OHA's alleged violation of 18 U.S.C. § 1001. Under 18 U.S.C. § 1001, a person "shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both" for making a false statement before any of the three branches of the United States government. However, "multiple courts have concluded that 18 U.S.C. § 1001 provides no private right of action." *Horde v. Elliot*, No. 17-CV-800 (WMW/SER), 2018 WL 987683, at *17 (D. Minn. Jan. 9, 2018) (citing cases), *report and recommendation adopted*, No. 17-CV-0800 (WMW/SER), 2018 WL 985294 (D. Minn. Feb. 20, 2018). "Nothing in [18 U.S.C. § 1001] provides for a private right of action or provides civil remedies for a private person affected by any such statements. Only the government may prosecute a defendant for this crime." *Daniels v. Am. Postal Worker Union*, 167 F. Supp. 2d 999, 1003 (N.D. Ill. 2001), *aff'd sub nom*. *Daniels v. Am. Postal Workers Union, Chicago Loc.*, 40 F. App'x 236 (7th Cir. 2002). Thus, Lee's claim premised on 18 U.S.C. § 1001 must be dismissed.

**C. State-Law Claims**

Lee also asserts claims under Nebraska law based on the OHA's alleged violations of Neb. Rev. Stat. §§ 28-613, 28-907, and 30-2473, and he also asserts various state-law tort claims against the OHA. As discussed previously, the Court does not have original jurisdiction to hear any of Lee's state-law claims, nor is it likely to exercise supplemental jurisdiction if Lee's federal claims are dismissed. With that caveat, the Court will briefly discuss Lee's possible state-law claims against the OHA.

  ***1. Nebraska Statutes***

Lee cites to two Nebraska criminal statutes, Neb. Rev. Stat. §§ 28-613 and 28-907, as a basis for his claims. Section 28-613 generally provides that commercial bribery and breach of a duty to act disinterestedly is punishable as a Class I misdemeanor,[4] and section 28-907 provides a similar penalty for the offense of false reporting.[5] Nothing in

---

[4] Section 28-613 specifically provides, in relevant part:

> (1) A person commits a Class I misdemeanor if he or she solicits, accepts, or agrees to accept any benefit as consideration for knowingly violating or agreeing to violate a duty of fidelity to which he or she is subject as:
>   (a) Agent or employee; or
>   (b) Trustee, guardian, or other fiduciary; or
>   (c) Lawyer, physician, accountant, appraiser, or other professional advisor; or
>   (d) Officer, director, partner, limited liability company member, manager, or other participant in the direction of the affairs of an incorporated or unincorporated association; or
>   (e) Duly elected or appointed representative or trustee of a labor organization or employee of a welfare trust fund; or
>   (f) Arbitrator or other purportedly disinterested adjudicator or referee.

Neb. Rev. Stat. § 28-613.

[5] In relevant part, section 28-907 states:

> (1) A person commits the offense of false reporting if he or she:
>   (a) Furnishes material information he or she knows to be false to any peace officer or other official with the intent to instigate an investigation of an alleged criminal matter or to impede the investigation of an actual criminal matter;
>   . . . or
>   (e) Furnishes material information he or she knows to be false to any governmental department or agency with the intent to instigate an investigation or to impede an ongoing investigation and which actually results in causing or impeding such investigation.

11

the plain language of either section 28-613 or section 28-907 "provide[s] a basis from which to infer that a civil cause of action exists," and "a party may not convert a purely penal statute . . . into a remedial one."  Cole v. Wilson, 661 N.W.2d 706, 709 (Neb. Ct. App. 2003).  Thus, neither section 28-613 nor section 28-907 provide Lee an independent civil remedy.

As a basis for his claims, Lee also cites to Neb. Rev. Stat. § 30-2473, which provides that the personal representative of an estate who improperly exercises his or her power "is liable to interested persons for damage or loss resulting from breach of his [or her] fiduciary duty to the same extent as a trustee of an express trust."  Clearly, this statute applies to the personal representative administering a decedent's estate and has no application to the facts alleged in Lee's Complaint.  Thus, Lee cannot state any claim for relief under section 30-2473.

Moreover, to the extent Lee may rely on any of these Nebraska statutes as a basis for his federal claims under 42 U.S.C. § 1983, alleged violations of state laws "do not by themselves state a claim under 42 U.S.C. § 1983," Scheeler v. City of St. Cloud, Minn., 402 F.3d 826, 832 (8th Cir. 2005) (internal quotation marks and citation omitted); Doe v. Gooden, 214 F.3d 952, 955 (8th Cir. 2000) ("Violations of state law do not state a claim under 42 U.S.C. § 1983."); and to the extent Lee requests that the OHA or Poore be criminally charged under either section 28-613 or section 28-907, he does not state a federal claim, as a private plaintiff cannot force a criminal prosecution because the

---

(2)(a) False reporting pursuant to subdivisions (1)(a) through (d) of this section is a Class I misdemeanor.
(b) False reporting pursuant to subdivision (1)(e) of this section is an infraction.

Neb. Rev. Stat. § 28-907.

12

authority to initiate criminal charges lies only with state and federal prosecutors, *Nieves v. Bartlett*, 587 U.S. 391, 417 (2019) (Gorsuch, J., concurring in part and dissenting in part) ("the decision whether to institute criminal charges is one our Constitution vests in state and federal executive officials"). *See Chavez v. Lowe*, No. 4:21CV3319, 2022 WL 1491057, at *2 (D. Neb. May 11, 2022) (plaintiff failed to state § 1983 claim based on violation of Nebraska false reporting statute).

### 2. Tort Claims

Liberally construed, Lee also asserts state-law tort claims of tortious interference with a contractual relationship, intentional infliction of emotional distress, slander, and defamation. The Nebraska Political Subdivisions Tort Claims Act ("PSTCA"), Neb. Rev. Stat. § 13-901 to 13-928, "is the exclusive means by which a tort claim may be maintained against a political subdivision or its employees." *Smith v. Iverson*, No. 8:19CV298, 2019 WL 4417548, at *17 (D. Neb. Sept. 16, 2019) (quoting *Geddes v. York County*, 729 N.W.2d 661, 665 (Neb. 2007)); *see* Neb. Rev. Stat. § 13-902 ("[N]o suit shall be maintained against such political subdivision or its officers, agents, or employees on any tort claim except to the extent, and only to the extent, provided by the [PSTCA]."). As previously stated, the OHA is a political subdivision of the State of Nebraska, *see* Neb. Rev. Stat. § 71-1575(16), and tort claims against the OHA are governed by the PSTCA, *see* Neb. Rev. Stat. § 71-15,168.

Even assuming that Lee can state actionable tort claims against the OHA, his claims could be subject to dismissal for noncompliance with the pre-suit notice requirements of the PSTCA. Under Nebraska law, the filing or presentment of a claim to the appropriate political subdivision, while it is not a jurisdictional prerequisite, is a

condition precedent to commencement of a suit under the PSTCA. *Keller v. Tavarone*, 628 N.W.2d 222, 230 (Neb. 2001); Neb. Rev. Stat. § 13-920 ("No suit shall be commenced against any employee of a political subdivision for money on account of damage to or loss of property or personal injury to or the death of any person caused by any negligent or wrongful act or omission of the employee while acting in the scope of his or her office or employment . . . , unless a claim has been submitted in writing to the governing body of the political subdivision within one year after such claim accrued in accordance with section 13-905."). Lee is not required to plead that he has complied with this statutory requirement, but noncompliance can be raised as an affirmative defense. *See Anderson v. Nebraska*, No. 4:17-CV-3073, 2018 WL 4599832, at *5 (D. Neb. Sept. 25, 2018). Lee filed this action approximately two weeks after the OHA's failed eviction action in the county court so it is doubtful that Lee presented his tort claims to the OHA and received final disposition of the claims prior to the filing of this suit. *See* Neb. Rev. Stat. § 13-906 ("No suit shall be permitted under the Political Subdivisions Tort Claims Act . . . unless the governing body of the political subdivision has made final disposition of the claim, except that if the governing body does not make final disposition of a claim within six months after it is filed, the claimant may, by notice in writing, withdraw the claim from consideration of the governing body and begin suit under such act . . . .").

      In addition, the PSTCA authorizes tort claims against municipalities, *see* Neb. Rev. Stat. § 13-908, subject to certain exceptions, including "[a]ny claim arising out of assault, battery, false arrest, false imprisonment, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights," sometimes referred to as the intentional-torts exception. Neb. Rev. Stat. § 13-910(7). The language

of the statute alone suggests that Lee's claims of slander and tortious interference are likely barred by the PSTCA.

## IV. CONCLUSION

In its present form, the Complaint fails to state a plausible claim for relief under federal law. However, on the Court's own motion, Lee will be given 30 days to file an amended complaint that states a plausible claim under 42 U.S.C. § 1983 and/or the FHA in accordance with this Memorandum and Order. Pending amendment of the Complaint to allege a plausible federal claim, the Court makes no finding of jurisdiction over any state-law claims alleged in the Complaint.

If Lee decides to file an amended complaint, he must include all of the claims he wishes to pursue against all of the defendants he wishes to proceed against in one document. The amended complaint must identify each defendant by name and set forth all of Lee's claims (and any supporting factual allegations) against that defendant. Lee should be mindful to explain what each defendant did to him, when the defendant did it, how the defendant's actions harmed him, and what specific legal right Lee believes the defendant violated.

If Lee fails to file an amended complaint in accordance with this Memorandum and Order, this matter will be dismissed without further notice to Lee. The Court reserves the right to conduct further review of Lee's claims pursuant to 28 U.S.C. § 1915(e) after he addresses the matters set forth in this Memorandum and Order.

IT IS THEREFORE ORDERED that:

1. Lee's Motion for Status, Filing No. 7, is granted consistent with this Memorandum and Order.

2.	Lee shall have 30 days to file an amended complaint in accordance with this Memorandum and Order. Failure to file an amended complaint within the time specified by the Court will result in the Court dismissing this case without further notice to Lee. In his amended complaint, Lee must identify each defendant by name and set forth all of Lee's claims (and any supporting factual allegations) against that defendant. Lee should be mindful to explain in his amended complaint what each defendant did to him, when the defendant did it, and how the defendant's actions harmed him.

3.	In the event that Lee files an amended complaint, he shall restate any relevant allegations of the Complaint, Filing No. 1, and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims. Lee is warned that an amended complaint will supersede, not supplement, his prior pleadings.

4.	The Court reserves the right to conduct further review of Lee's claims pursuant to 28 U.S.C. § 1915(e) in the event he files an amended complaint.

5.	The Clerk of Court is directed to set a pro se case management deadline using the following text: **March 26, 2025**: amended complaint due.

Dated this 24th day of February, 2025.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge

16